UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
MAMADOU BOUCOM NDOYE,                                       :
                                                           :
                                        Petitioner,        :
                                                           :                26-CV-1219 (VSB)
                        -against-                           :
                                                           :          **OPINION & ORDER**
WILLIAM JOYCE, *et al.*,                                    :
                                        Respondents.        :
                                                           :
-----------------------------------------------------------X

Appearances:

Mamadou Boucom Ndoye
Goshen, NY
*Pro Se Petitioner*

Charisse Smith Ndoye
New York, NY
*Next Friend for Pro Se Petitioner*

Tudor M. Neagu
United States Attorney's Office, Southern District of New York
New York, NY
*Counsel for Respondents*

VERNON S. BRODERICK, United States District Judge:

Before me is Mamadou Boubacar Ndoye's ("Ndoye" or "Petitioner") petition for a Writ

of Habeas Corpus under 28 U.S.C. § 2241 challenging the lawfulness of his detention by

Immigration and Customs Enforcement ("ICE") and seeking an order directing ICE to

immediately release him from custody.  (Doc. 1 ("Petition" or "Pet.").)  Because I find that ICE

detained Petitioner in violation of its own regulations and that his detention violated his due

process rights, the Petition is GRANTED, and the Government is ordered to immediately release

Petitioner from custody.

## I.  **Background and Procedural History**[1]

Petitioner is a Malian national who was initially detained by ICE on October 21, 2025 as part of an "operation" on "Canal Street."  *Ndoye I*, 2026 WL 306387, at *1.  As I explained in *Ndoye I*, the Government's initial detention violated Petitioner's due process rights because ICE violated their own regulations in detaining Petitioner and failed to procure any evidence that Petitioner's "arrest was, in fact, anything more than 'happenstance.'"  *Id.* at *8.  Prior to his arrest on October 21, 2025, Petitioner had been living "in the United States subject to a final removal order since approximately 2008."  *Id.* at *1.

Petitioner had been granted an Order of Supervision ("OSUP"), which was revoked at the same time as his arrest on October 21, 2025.  *Id.*  In *Ndoye I*, the Government argued that Field Office Directors were authorized to revoke OSUPs "because there was a delegation order in place from July 25, 2019 issued by the Executive Associate Director Nathalie R. Asher delegating 'authority under INA § 241 [8 U.S.C. § 1231] and 8 C.F.R. Part 241, relating to warrants of removal, reinstatement of removal, self-removal, and release of aliens from detention,' to assistant field officers."  *Id.* at *5 (quoting *Ndoye I*, Doc. 30 ("Supp. Resp."), No. 25-CV-8856 (S.D.N.Y. Dec. 16, 2025) (cleaned up)).  In other words, according to the Government, the primary issue in *Ndoye I* was "whether the Delegation Order delegates the authority to revoke an Order of Supervision."  (Supp. Resp. 11.)  I joined several of my colleagues in finding that it does not, *Ndoye I*, 2026 WL 306387, at *6–7 (collecting cases), and granted the petition.  *Id.* at *10.  Petitioner was released from custody on February 5, 2026. *Ndoye I*, Doc. 36, No. 25-CV-8856 (S.D.N.Y. Feb. 6, 2025).

---

[1] This is not Petitioner's first pro se habeas petition before this Court.  The facts of Petitioner's earlier detention were recounted in *Ndoye v. Joyce* ("*Ndoye I*"), No. 25-CV-8856, 2026 WL 306387, at *1–2 (S.D.N.Y. Feb. 5, 2026).

Petitioner was arrested and re-detained on February 12, 2026, and the Petition in this case was filed on February 13, 2026.  (Pet.)  Here, as with the initial case, the Petition is brought by Petitioner's wife and next friend Charisse Smith Ndoye.  (*Compare id.*, *with Ndoye I*, Doc. 1, No. 25-CV-8856 (S.D.N.Y. Oct. 25, 2025).)[2]  Here, as with the initial case, the Petition has been signed by a Field Office Director.  (Doc. 10-5.)  The revoking officer is Field Office Director Kenneth Genalo.  (*Id.*)

On the same day, I issued an Order to Show Cause why habeas should not issue, and ordered the Government not to transfer Petitioner out of the country to preserve my jurisdiction pending a ruling on the petition, or outside of the Southern and Eastern Districts of New York or the District of New Jersey, given Petitioner's interest in further participation in this matter. (Doc. 4.)  I also scheduled an initial remote hearing for February 17, 2026 at 1:00 p.m., and an Order to Show Cause hearing for March 6, 2025.  (*Id.*)  After the hearing on February 17, 2026, I scheduled a follow-up remote hearing on February 20, 2026 for Respondents to provide more information about the basis for Petitioner's detention.  (Doc. 6.)  At the second of these hearings, the Government requested a short briefing extension and adjournment of the Order to Show Cause hearing to March 9, 2026, which I granted.  (Doc. 8.)

On February 27, 2026, Respondents filed a memorandum of law in opposition to the Petition.  (Doc. 9 ("Mem.").)  Respondents also filed a document entitled "Return to Habeas Petition", (Doc. 10), attaching a notice to appear, (Doc. 10-1), a removal order, (Doc. 10-2), an I-213 form, (Doc. 10-3), a warrant of removal, (Doc. 10-4), a notice of revocation of Petitioner's OSUP, (Doc. 10-5), and the 2019 delegation order from Nathalie Asher, (Doc. 10-6).

---

[2] As I have previously explained, Ms. Ndoye meets the prerequisites to serve as Petitioner's next friend.  *Ndoye I*, 2026 WL 306387, at *1 n.2.

Respondents also filed an accompanying declaration from Deportation Officer Crystal Harris. (Doc. 11.)  On March 6, 2026, Petitioner's next friend filed a reply.  (Doc. 12.)

## II.  <u>Legal Standard</u>

28 U.S.C. § 2241(c)(3) provides that a court shall grant the writ of habeas corpus if a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."  The Fifth Amendment requires that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."  U.S. Cont. amend. V.  These due process rights apply to all persons in the United States, whether citizens or not.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

If detention is the result of an agency violating their own regulations, then the Government may not have provided the detainee with the process that they are due under the Constitution, and the writ can issue.  *See Funes v. Francis*, No. 25-CV-7429, 2025 WL 3263896, at *21–25 (S.D.N.Y. Nov. 24, 2025); *E.M.M. v. Almodovar*, No. 25-CV-08212, 2025 WL 3077995, at *5–6 (S.D.N.Y. Nov. 4, 2025); *Zhu v. Genalo*, 798 F. Supp. 3d 400, 414–15 (S.D.N.Y. 2025); *Chipantiza-Sisalema v. Francis*, No. 25-CV-05528, 2025 WL 1927931, at *3–4 (S.D.N.Y. July 13, 2025); *Roman-Cruz v. Lyons*, No. 25-CV-10522, 2026 WL 114936, at *2–3 (S.D.N.Y. Jan. 15, 2026).  "The common-law history of the writ underscores that the traditional remedy in habeas is release from illegal custody."  *Funes*, 2025 WL 3263896, at *24 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)); *accord Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention." (emphasis in original)); *Munaf v. Geren*, 553 U.S. 674, 693–94 (2008).

Pro se litigants are afforded "special solicitude" and their filings must be interpreted to "raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (per curiam) (internal quotation marks omitted); *see also Lithgow v. Keyser*, No. 20-CV-3655, 2021 WL 4200722, at *2 (S.D.N.Y. Aug. 16, 2021) (construing habeas petition liberally because of special solicitude due to pro se litigants), *report and recommendation adopted*, 2021 WL 4391122 (S.D.N.Y. Sept. 24, 2021); *Rodriguez v. Orange Cnty. Corr. Facility*, No. 23-CV-0242, 2023 WL 317692, at *2 (S.D.N.Y. Jan. 19, 2023) (interpreting the "liberal construction" of pro se habeas petitions to also apply to those filed by a "relevant next friend"); *Iza by Iza v. Larocco*, No. 25-CV-6915, 2026 WL 31378, at *1 (E.D.N.Y. Jan. 5, 2026) (similar).

### III.    Discussion

As I explained in *Ndoye I*, "[i]n order to assess the validity of Petitioner's detention, I must evaluate whether or not ICE followed their regulations in revoking Petitioner's OSUP. Petitioner's OSUP was revoked pursuant to 8 C.F.R. § 241.4, and 8 C.F.R. § 241.4(l) governs the revocation of release of an OSUP." *Ndoye I*, 2026 WL 306387, at *3 (cleaned up). Further, "the legally consistent reading of § 241.4(l) is a unified reading," meaning that, in revoking an OSUP, the Government must follow all of the procedures laid out in subsections (1)–(3), including ensuring that the appropriate official revokes an OSUP when detaining an individual who has previously been released on his or her own recognizance. *Id.* at *5. § 241.4(l)(2) provides:

> The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner.

Previously, I found that, because Petitioner's OSUP was not signed by either of the officials enunciated in § 241.4(l)(2) and there had been no delegation of this authority to revoke an OSUP, ICE had violated its own regulations in detaining Petitioner, and I granted Petitioner's habeas petition. *See Ndoye I*, 2026 WL 306387, at *5, 8–10 ("[T]he Delegation Order issued by ICE in 2019 governs four specific points in time along the removal process relating to warrants of removal[,] reinstatement of removal[,] self-removal[,] and release of aliens from detention. Nowhere in the Delegation Order does the authority to revoke an OSUP appear as one delegated to assistant field officers." (internal quotation marks and citation omitted)).  Here, however, Respondents do not rely on the argument that the delegation order provides Field Office Directors with the authority to revoke OSUPs.  (Mem. 13 ("The Delegation Order is inapplicable.").  Instead, Respondents claim that Field Office Directors are effectively District Directors and so have free-standing authority to revoke OSUPs without delegation from the delegation order.  (*Id.* at 13 n.7 ("The regulations refer to the legacy title of 'district director' under the Immigration and Naturalization Service, but that title and its duties were transitioned to Field Office Directors.").  Respondents cite no case law in support of their claim that District Directors and Field Office Directors are equivalent, and point to no authority in support of their claim that Field Office Directors have some sort of freestanding authority to revoke an OSUP.

Courts do not appear to have squarely addressed the issue of whether Field Office Directors are District Directors or whether Field Office Directors have the authority to revoke OSUPs; however, the courts that have reviewed the applicable regulations note that "[i]t is not clear from the regulation, which refers to previous Immigration and Naturalization Service position titles, whether an ICE field office director has authority to revoke an alien." *Rombot v. Souza*, 296 F. Supp. 3d 383, 387 (D. Mass. 2017); *see also Umanzor-Chavez v. Noem*, No. 25-

CV-01634, 2025 WL 2467640, at *5 (D. Md. Aug. 27, 2025) ("[I]t it is not clear whether an ICE field office director, let alone a deportation officer, has th[e] authority" to revoke an OSUP.).

ICE's regulations are somewhat contradictory as to whether Field Office Directors and District Directors have the same responsibilities and authority. For example, 8 C.F.R. § 1.2 provides that "Director or district director . . . . [o]n or after March 1, 2003, pursuant to delegation from the Secretary of Homeland Security or any successive re-delegation, [] mean[s], to the extent that authority has been delegated to such official: asylum office director; director, field operations; district director for interior enforcement; district director for services; field office director . . ." Whether this means that Field Office Directors are *ipso facto* District Directors, or if, instead, they are only endowed with the powers of District Directors "to the extent that authority has been delegated to such official," *id.*, through an explicit separate delegation in the rules and regulations, is not clear.

Another regulation, 8 C.F.R. § 287.5, titled "Exercise of power by immigration officers," lays out the different authorities and responsibilities of various immigration officers. This rule was amended as recently as September 5, 2025 and supports a conclusion that District Directors and Field Office Directors are separate entities because those positions are dealt with separately. Part (e), titled "[p]ower and authority to execute warrants," explains the different powers and authorities to execute warrants that are given to different immigration officials. 8 C.F.R. § 287.5(e). Subpart (2) of this section is titled "[i]ssuance of arrest warrants for immigration violation," and states which ICE officials may issue arrest warrants. § 287.5(e)(2)(i) lists, as one type of official with such authority: "District directors (except foreign)." Another subsection, § 287.5(e)(2)(xxxix), lists "Field Office Directors" as another type of official with such authority. Some courts have acknowledged in dicta that Field Office Directors may have certain authority

to revoke OSUPs that does not inure to Assistant Field Office Directors. *See, e.g., Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 161 (W.D.N.Y. 2025) ("[U]nder 241.4(l)(2), the officials with the power to revoke release after making certain findings include field office directors and any other official delegated the function or authority . . . for a particular geographic district, region, or area." (internal quotation marks omitted)); *Gazazyan v. Bondi*, No. 25-CV-02599, 2025 WL 3898484, at *5 (C.D. Cal. Nov. 7, 2025) ("Considering Sections 1.2 and 241.4(l), the relevant inquiry is whether [the officers listed in § 1.2, including the Field Office Director] revoked [Petitioner's] release."); *Santamaria Orellana v. Baker*, No. 25-CV-1788, 2025 WL 2841886, at *4 (D. Md. Oct. 7, 2025) ("[S]everal federal courts addressing similar circumstances have held that a failure to adhere to the requirement that an Executive Associate Director or a Field Office Director make the determination to revoke release in compliance with 8 C.F.R. § 241.4 violates due process and thus mandates release.").

However, whether or not a Field Office Director has the authority to revoke an OSUP, it is uncontroverted that, like a District Director, he or she may only do so "when, in [their] opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." 8 C.F.R. § 241.4(l)(2). Here, Respondents explicitly acknowledge that no such findings have been made. (Order to Show Cause Hearing Transcript ("Tr") 3:12-4-8.) Since no such finding has been made, the agency has again disregarded the explicit text of its own regulation and violated Petitioner's due process rights. *See Rombot*, 296 F. Supp. 3d at 387 (granting habeas where there was nothing in the record to show that the Field Office Director "ever made the threshold determination that [petitioner's] revocation was in the public interest and circumstances did not reasonably permit referral of the case to the equivalent of the Executive Associate Commissioner" (internal

8

quotation marks omitted)); *see also Ceesay*, 781 F. Supp. 3d at 162. (failure to "ma[k]e the findings that a district director is required to make before revoking [petitioner's] release," constitutes an independent ground for granting habeas relief, "even if the term 'district director' might include" a Field Office Director); *Martinez v. Jamison*, No. 26-CV-00718, 2026 WL 700335, at *5 n.6 (E.D. Pa. Mar. 12, 2026) ("[T]here is no indication on the Notice itself that [Acting Field Office Director] engaged in the required fact finding and determined that (1) it was 'in the public interest' to revoke Petitioner's release, and (2) Petitioner's case could not reasonably be referred to the Executive Associate Commissioner for the revocation decision.").

At the Order to Show Cause hearing, Respondents acknowledged that, "in other cases," where District Directors had revoked OSUPs, they provided proof that they had complied with the dictates of 8 C.F.R. § 241.4(l)(2). (Tr. 4:16-5:3 ("We inquired, and there is no clarity as to why the additional sentence was not here where it normally is. So it is a problem.").) Even if Field Office Director Genalo were to make findings of this nature now, such an after-the-fact attempt to correct an unlawful agency action would likely be ineffective to retroactively cure a decision to revoke an OSUP that was not explicitly made on the basis of the required findings. *See Ceesay*, 781 F. Supp. 3d at 162 ("So before a district director can revoke release, the district director must make certain findings."); *cf. Yao v. Almodovar*, No. 25-CV-9982, 2025 WL 3653433, at *3 (S.D.N.Y. Dec. 17, 2025) ("A 'post hoc rationalization' first articulated in litigation, however, carries little weight."); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 486 (S.D.N.Y. 2025) (rejecting ICE's position, "adopted post hoc and raised for the first time in this litigation"). In any event, even after detaining Petitioner, the agency has refused to make a finding that revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. (Tr. 4:9-15.)

In other words, even accepting *arguendo* the Government's claim that Field Office Directors are District Directors, a Field Office Director must make a finding prior to detention that revocation of Petitioner's OSUP was in the public interest and the circumstances did not permit referral to the Executive Associate Commissioner. 8 C.F.R. § 241.4(l)(2). There is no indication in the record, (*but see* Docs. 10-3; 10-4; 10-5), that Field Office Director Genalo made such a finding prior to Petitioner's detention, and the Government refuses to make such a finding now. (Tr. 4:9-15.) Petitioner's next friend, Charisse Smith Ndoye, argued during the Order to Show Cause hearing that this is because Petitioner's detention and removal is not, in fact, in the public interest because prior to his re-detention Petitioner was caring for his family, including a sick child. (Tr. 10:9-21 (Petitioner "can't take care of his kids or the child that we have in the hospital. How is that in public interest?").) To be sure, the Government argued in response that "ICE has the highest utmost interest in removing him." (Tr. 11:24-12:21.) However, I need not and do not consider the merits of this dispute because ICE has not complied with its own regulations. *See supra* at 8–9.

As I explained in *Ndoye I*, § 241.4(l) exists precisely to avoid generating such conflicting accounts after the fact—the regulation requires the agency to obey a unified and standardized procedure for arresting and detaining individuals when they revoke OSUPs. 2026 WL 306387, at *9 (§ 241.4(l) "ensure[s] that '[t]he notion of fair play animating [the Fifth] [A]mendment' is upheld, and to prevent an 'agency from promulgating a regulation affecting an individual liberty or interest,' and then 'with impunity ignor[ing] or disregard[ing]' it" (quoting *Montilla v. I.N.S.*, 926 F.2d 162, 164 (2d Cir. 1991)). In *Ndoye I*, I noted that "post hoc rationalizations" for agency action were inapposite to the orderly administration of justice through the implementation of pre-authorized procedures and rules. *Id.* ("Absent such procedures, the

10

agency will be free to . . . merely randomly stage 'encounters' . . . and then create post hoc rationalizations for these unlawful detentions."). Now, Respondents do not even supply such a post hoc rationalization. (Tr. 4:9-15.)

In light of this posture, where the agency has refused to comply with the plain text of its own unambiguous regulations, I have little trouble concluding that the Government has failed to provide Petitioner with the necessary process due to him under the Constitution. *See Ndoye I*, 2026 WL 306387, at *9 (S.D.N.Y. Feb. 5, 2026) ("The question of what or how much process is due to a petitioner subject to a final removal order is an open question that I do not broach here today. However, at a bare minimum, ICE must follow its own regulation, published at 8 C.F.R. § 241.4(l), for revoking OSUPs and detaining individuals subject to final orders of removal.") Accordingly, the Petition is GRANTED.

## IV.    Conclusion

Respondents are hereby ORDERED to immediately release Petitioner from custody, to certify compliance with this order by filing an entry on the docket no later than 5:00 p.m. on March 18, 2026, and to notify Petitioner's next friend of where and when Petitioner will be released.

11

SO ORDERED.

Dated:      March 17, 2026
            New York, New York

_____
Vernon S. Broderick
United States District Judge